UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
FRANCISCO ROSARIO,                                  :
                                                    :
                      Petitioner,    :        **05 CIV 6096 (HB)**
                                                    :        **07 CIV 8260 (HB)**
      -against-                                  :
                                                    :        <u>**OPINION & ORDER**</u>
UNITED STATES OF AMERICA,                           :
                                                    :
                      Respondent.   :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge**[*]:

    *Pro se* petitioner Francisco Rosario ("Petitioner") filed the instant two motions to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 on June 30, 2005 and September 24, 2007. The Government submitted a memorandum in opposition to both motions on March 14, 2008. For the reasons set forth below, Petitioner's motions are DENIED.

## I. BACKGROUND

    On April 4, 2000, Petitioner pleaded guilty to conspiracy, with intent to distribute, five kilograms or more of cocaine. On May 4, 2000, this Court sentenced him to 120 months' incarceration to run concurrently with his state sentence, followed by five years of supervised release. Judgment, No. 98 Cr. 01038-015 (HB) (May 4, 2000). On May 8, 2000, Petitioner filed with this Court a Notice of Appeal of his sentence to the Second Circuit. On November 16, 2000, he moved to withdraw his appeal, and the Circuit granted his motion on November 29, 2000. Appeal No. 00-1434 (2d Cir.). On July 24, 2001, Petitioner completed his state sentence and was transferred back into federal custody.

    On December 11, 2001, Petitioner filed a habeas petition pursuant to 28 U.S.C. § 2241 in the Eastern District of New York; it was transferred to this district on May 1, 2002 ("2001 Petition"). Petitioner sought to gain credit for the eighteen months he spent in federal detention prior to his guilty plea, but this Court denied his petition, finding that the Bureau of Prisons had properly deducted the time Petitioner spent in federal detention from his state sentence because Petitioner was serving his state sentence while he was on loan to the federal authorities. *Rosario v. United States*, No. 02 Civ. 3360, 2004 WL 439386, *4 (S.D.N.Y. Mar. 9, 2004). In the

---

[*] Amy Kapoor, a Spring 2008 intern in my Chambers and a second-year law student at the Benjamin N. Cardozo School of Law, provided substantial assistance in the research and drafting of this opinion.

1

alternative, petitioner asserted a 28 U.S.C. § 2255 claim. This Court denied that claim, as well, as both time and procedurally barred because it was filed more than one year after Petitioner's conviction and because Petitioner had failed to address the legality of his sentence on direct appeal. *Id.*, at *5. Furthermore, this Court held that even if Petitioner's claim could be considered on the merits, it would nonetheless fail because there was no error in his sentence.

On June 30, 2005, Petitioner filed one of the two instant motions to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2005 Motion"). Petitioner alleges that his sentence was extended in violation of his Sixth Amendment right to a jury trial and that judicial fact-finding concerning his prior conviction violated the Sixth Amendment. Petr.'s Mot., No. 05 Civ. 6096, at 5 (June 22, 2005) ("2005 Mot."). The Government never responded to Petitioner's 2005 Motion, despite an Order issued September 9, 2005 by Judge William Pauley, to whom the 2005 Motion originally was assigned, directing the Government to respond. Order, No. 05 Civ. 6096 (Sept. 9, 2005).

On September 24, 2007, Petitioner filed a second motion pursuant to 28 U.S.C. § 2255, dated March 13, 2007 (the "2007 Motion"), requesting a downward departure in his sentence based on a memorandum dated April 28, 1995 by the United States Attorney General titled "Deportation of Criminal Aliens." Petr.'s Mot., No. 07 Civ. 8260 (Sept. 24, 2007) ("2007 Mot."). The memorandum, according to Petitioner, permits the Government to offer up to a two-level downward departure from the applicable guideline sentencing range in exchange for the alien's concession of deportability and agreement to accept a final order of deportation. *See* Memorandum to All Federal Prosecutors from Attorney General, re Deportation of Criminal Aliens (Apr. 28, 1995), *at* http://www.usdoj.gov/ag/readingroom/deportation95.htm. Petitioner also alleges violations of the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment and the Equal Rights Act of 1964 because aliens do not receive the same benefits and privileges as United States citizens. 2007 Mot., at 1.

## II. STANDARD OF REVIEW

To prevail on a 28 U.S.C. § 2255 claim, a petitioner must show either that (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *See Woodard v. United States*, No. 04 CIV 9695, 2005 U.S. Dist. LEXIS 26802, at *6 (S.D.N.Y. Nov. 8, 2005) (citing *Johnson v. United States*, 313 F.3d 815, 817 (2d Cir. 2002)); 28 U.S.C. § 2255.

## III. DISCUSSION

**A.   Jurisdiction**

Although Petitioner titled his second petition, "Motion for Time Reduction by an Inmate in Federal Custody Under 28 U.S.C. § 2255," the petition raises claims under both 28 U.S.C. §§ 2241 and 2255.  As the Second Circuit explained in *Chamber v. United States*, 106 F.3d. 472, 474 (2d Cir. 1997), §§ 2241 and 2255 address different types of claims.  "A petitioner seeking to challenge the legality of the imposition of a sentence by a court may therefore make a claim pursuant to Section 2255. . . . A challenge to the execution of a sentence, however, is properly filed pursuant to Section 2241."  *Id.*

Petitioner argues that his equal protection and due process rights were violated because a United States citizen is entitled to different sentencing privileges than an alien.  2007 Mot., at 1-2.  The Government argues that this portion of Petitioner's claim should be analyzed under § 2241 because it challenges the "execution of his sentence by the [Bureau of Prisons]."  Resp't's Opp'n, No. 07 Civ. 8260, at 11-12 (Mar. 14, 2008).  The Government contends that this Court therefore does not have jurisdiction to decide the § 2241 portion of Petitioner's claim because Petitioner was required to file it in the Northern District of Texas, where he is incarcerated.[1]  Resp't's Opp'n, at 11-12.  In the interests of justice and judicial economy, this Court will construe the entirety of Petitioner's 2007 Motion as seeking relief under 28 U.S.C. § 2255, and will decide all the issues it raises.

**B.   Petitioner Did Not Comply with the Requirement for Successive Petitions Set Forth in 28 U.S.C. § 2255(h)**

This Court dismissed Petitioner's 2001 Petition on its merits.  *Rosario*, 2004 WL 4393986, at *4-5.  Therefore, Petitioner's 2005 and 2007 Motions are considered "second" or "successive" motions under 28 U.S.C. § 2255(h), which provides that such a motion must be certified by the appropriate Court of Appeals, *i.e.*, in this case the Second Circuit, to the effect that the motion contains either "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h); *see* 28 U.S.C. § 2244(b)(3)(A).  *See also United*

---

[1] "Whenever a § 2241 habeas petitioner seeks to challenge his present custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."  *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004).

*States v. Carter*, 150 F.3d. 202, 202 (2d Cir. 1998) (petition filed after denial of first petition on the merits was a second or successive petition that must be certified by Court of Appeals); *Haouari v. United States*, 510 F. 3d. 350, 352 (2d Cir. 2007) (Anti-Terrorism and Effective Death Penalty Act requires an applicant who wishes to file a successive petition to first "move in the appropriate court of appeals for an order authorizing the district court to consider the application").

Here, Petitioner did not move for an order authorizing this Court to consider his 2005 or 2007 Motions, as required. While 28 U.S.C. § 1631 grants this Court discretion to transfer Petitioner's Motions to the Circuit, this Court will not exercise said discretion because the motions do not assert newly discovered evidence that could establish Petitioner's innocence and do not invoke a new rule of constitutional law, and, moreover, the claims are without merit as explained below. *See Mallet v. Miller*, 442 F. Supp. 2d 156, 157 (S.D.N.Y. 2006) (court did not transfer successive § 2255 petition to the Second Circuit because petition was without merit).

C.     ***Shepard v. United States* Does Not Apply Retroactively**

Petitioner claims in his 2005 Motion that this Court engaged in judicial fact-finding that exceeded the scope of its authority under *Shepard v. United States*, 544 U.S. 13 (2005) (establishing evidence a court may consider regarding a prior conviction). 2005 Mot., at 5. For Petitioner to succeed on this claim, *Shepard* would need to apply retroactively to cases on collateral review, as required by 28 U.S.C. § 2255(h).

While neither the Supreme Court nor the Second Circuit has addressed whether *Shepard* applies retroactively, every other Circuit that has addressed the issue has held that it does not apply retroactively. *See Corey v. United States*, 221 Fed. App'x 1, 2 (1st Cir. 2007); *United States v. Christensen*, 456 F.3d 1205, 1208 (10th Cir. 2006); *United States v. Armstrong*, 151 Fed. App'x 155, 157 (3d Cir. 2005); *United States v. Davis*, 133 Fed. App'x 916 (4th Cir. 2005). In light of the authority, this Court holds that *Shepard* does not apply retroactively to Petitioner's criminal case. Therefore, Petitioner's 2005 and 2007 Motions must be dismissed because they do not assert newly discovered evidence that could establish Petitioner's innocence or invoke a new rule of constitutional law, made retroactive to cases on collateral review, as required by 28 U.S.C. § 2255(h).

D.     **Petitioner's 2005 and 2007 Motions Are Time Barred**

A one-year statute of limitations applies to claims filed under 28 U.S.C. § 2255. In Petitioner's case, the one-year statute of limitations began on November 29, 2000, when the

4

Circuit granted Petitioner's motion to withdraw his appeal and his conviction therefore became final. *See* 28 U.S.C. § 2255(f). Both Petitioner's 2005 and 2007 Motions, therefore, were untimely and are dismissed as time barred.

**E.    Petitioner's 2005 and 2007 Motions Are Procedurally Barred**

In *United States v. Perez*, 129 F 3d. 255, 260 (2d Cir. 1997), the Second Circuit held that a defendant "is barred from raising claims in his § 2255 motion that he failed to raise on direct appeal unless he shows cause for the omission and prejudice resulting therefrom." Here, Petitioner withdrew his direct appeal in 2000 but failed to make any of the arguments in his petitions filed in 2005 and 2007, and did not put forth any arguments why he would have been prejudiced from bringing such claims. Therefore, Petitioner's 2005 and 2007 motions are procedurally barred and must be dismissed on this basis, as well.

**F.    Petitioner's 2005 and 2007 Motions Are Without Merit**

Even if Petitioner's 2005 and 2007 Motions were not dismissed on the procedural grounds set forth above, they would be denied on their merits.

**1. Petitioner's Criminal History Category Enhancement Due to His Prior State Conviction Was Permissible under *Shepard***

Petitioner argues in his 2005 Motion that "[j]udicial fact-finding regarding facts pertaining to a prior conviction exceeded court[']s authority violating my 6th amendment right" and "Judge found facts about the type of prior convictions [sic] exceeded the scope of his authority in light of *Shepard*." 2005 Mot., at 5.

In *Shepard*, the Court explained that

> a fact of a prior conviction is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant or to some comparable judicial record of this information.

544 U.S. at 26. In *United States v. Fagan*, 406 F. 3d 138, 141-42 (2d Cir. 2005), the Second Circuit held that in light of *Shepard*, a district court may assess the criminal history points for prior felonies when a defendant entered a plea of guilty or *nolo contendere*.

Here, this Court determined that Petitioner's Criminal History Category was II. Judgment, No. 98 Cr. 01038-015 (HB) (May 4, 2000) 6. The Court's determination was based on the Probation Office's Presentence Investigation Report dated December 9, 1999 and representations by Petitioner's counsel during the sentencing hearing on April 7, 2000. The Presentence Investigation Report stated that on May 24, 1999, Petitioner pleaded guilty to the

5

charges in his indictment "in accordance with a plea agreement which stipulates the following." Two such stipulations were that "[b]ased upon the information available to the Government (including representations made by the defense), the defendant has three criminal history points," which establish that "the defendant's Criminal History Category is II." Presentence Investigation Report (Dec. 9, 1999) 2-3. Under the heading, "Adult Criminal Convictions," the Presentence Investigation Report showed that Petitioner was arrested on February 5, 1990, a warrant was issued for Petitioner on February 6, 1990, and Petitioner was not returned on said warrant until June 12, 1998. Petitioner was then convicted for criminal possession of a controlled substance in the second degree in New York state court and sentenced on June 29, 1998 to three years' to life imprisonment in state prison. Presentence Investigation Report 11. The Presentence Investigation Report also noted an arrest on June 10, 1998, with a charge of criminal possession of a controlled substance in the first degree, which was dismissed on August 11, 1998 "due to conviction on unrelated case." *Id.* During the sentencing hearing, Petitioner's counsel represented to this Court that Petitioner had pleaded guilty in the 1990 state criminal matter and reminded the Court that Petitioner's 1998 charge had been dismissed. Sentencing Tr. 4:5 (Apr. 7, 2000). Otherwise, Petitioner's prior conviction and prior arrest were not discussed during the sentencing hearing.

Because *Shepard* permits the fact of a prior conviction to appear in the terms of a plea agreement, as here, and the Second Circuit in *Fagan* held that in light of *Shepard*, a district court may assess the criminal history points for prior felonies when a defendant entered a plea of guilty, this Court did not violate Petitioner's Sixth Amendment rights when it considered his prior state conviction in calculating his Criminal History Category level. *See* 544 U.S. at 26; 406 F. 3d at 141-42.

**2. Petitioner Has No Basis for a Downward Departure of His Sentence**

In his 2007 Motion, Petitioner argues that his rights under the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment and the Equal Rights Act of 1964 have been violated because, as an alien, he does not receive the same benefits and privileges as United State citizens, including access to a minimum security facility or a community correction center. 2007 Mot., at 1-2. Petitioner thus seeks a downward departure in his sentence. In *United States v. Restrepo*, 999 F. 2d. 640, 641 (2d Cir.), *cert. denied*, 510 U.S. 954 (1993), the Second Circuit held that the fact that the defendant would be deported post-release and would suffer other collateral consequences not suffered by United States citizens

"was not a permissible basis for [downward] departure." In that case, the district court had found that the defendant would suffer three principal consequences as a result of his alien status: "First, a resident alien convicted of a narcotics offense must be deported unless he is eligible for discretionary relief from deportation." *Id.* at 642. "Second, the court found that due to a policy of the Bureau of Prisons . . . , 'solely because of his status as a deportable alien, the defendant's sentence will be served under circumstances that are more severe than those facing a United States citizen under similar circumstances.'" *Id.* (quoting *United States v. Restrepo*, 802 F. Supp. 781, 783 (E.D.N.Y. 1992)). Specifically,

> [u]nder that policy, Restrepo, as a deportable alien, would receive a 'Public Security Factor' designation . . . that would render him ineligible (a) to serve his sentence in a minimal security facility, and (b) to serve a part of the last 10% of his sentence in a community custody program such as a halfway house or home confinement.

*Id.* at 642-43. Third, the district court found that because the defendant was a deportable alien, the Immigration and Naturalization Service ("INS") would file a detainer with the Bureau of Prisons that could result in his being incarcerated in an INS facility for an additional period while awaiting the completion of deportation proceedings. *Id.* at 643.

The Second Circuit "decline[d] to rule that pertinent collateral consequences of a defendant's alienage could not serve as a valid basis for departure if those consequences were extraordinary in nature or degree." *Id.* at 644. The Court, however, concluded that none of these principal consequences relied upon by the district court, which also encompass Petitioner's bases here, justified a downward departure. *Id.* The Court observed that "the Bureau [of Prisons] need not reassign the prisoner to a halfway house if there is no such unit in his home state, and the absence of such a facility has been held to be an impermissible ground for departure from the Guidelines," and that "disapproval of the Bureau's exercise of its discretion to deny that prisoner reassignment to a minimum-security facility is likewise an inappropriate basis for departure." *Id.* at 645-46.

Several other courts of appeals, however, have upheld downward departures where a defendant's immigration status would subject him to harsh conditions of confinement. *See United States v. Farouil*, 124 F.3d 838 (7th Cir. 1997); *United States v. Charry Cubillos*, 91 F.3d 1342 (9th Cir. 1996); *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). Judge Lynch in this district has noted that both the Seventh and Ninth Circuits argued that the Supreme Court's decision in *United States v. Koon*, 116 S. Ct. 2035 (1996), "undermined the logic of *Restrepo*."

7

*United States v. Mohammed*, 315 F. Supp. 2d 354, 367 (S.D.N.Y. 2003). However, "[w]hether *Koon* undermines *Restrepo* is for the Second Circuit to decide; this Court remains bound by its authority." *Id.* (quoting *Tsang v. United States*, No. 97 Civ. 1886, 1997 WL 630182 (S.D.N.Y. Oct. 9, 1997) (recognizing binding authority of *Restrepo* despite circuit conflict)). In *Koon*, the Supreme Court held that only the U.S. Sentencing Commission could prevent a factor from serving as a basis for departure in every case. 116 S. Ct. at 2050-51. Thus, "[a]fter *Koon*, federal courts can no longer categorically proscribe a basis for departure—unless the Commission has proscribed, as a categorical matter, consideration of the factor." *Charry Cubillos*, 91 F.3d at 1344.

Nevertheless, in *Mohammed*, Judge Lynch held that "even if *Restrepo* did not bar departures on this ground, this Court would decline to depart in this case" because the courts that have permitted downward departures for harsh conditions due to alienage "have emphasized that such a departure would only be warranted where the conditions in question are 'substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense.'" *Id.* (quoting *United States v. Guzman*, 236 F.3d 830, 834 (7th Cir. 2001)). Moreover, the Second Circuit later reaffirmed the holding in *Restrepo* in the post-*Booker* advisory Sentencing Guideline regime. *United States v. Duque*, No. 06 Cr. 220, 2007 WL 4315755, *1 (2d Cir. Dec. 10, 2007) (holding that collateral effects of deportability, *e.g.,* "(1) the unavailability of preferred conditions of confinement, [and] (2) the possibility of an additional period of detention pending deportation following the completion of sentence," generally do not justify a departure from the Sentencing Guidelines range). *See also United States v. Wills,* 476 F.3d 103, 107 (2d Cir. 2007).

The recent Supreme Court decision in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), grants district courts greater discretion to award a downward departure to an alien based on collateral consequences that may befall him as a result of his immigration status. However, in a post-*Kimbrough* case in the Western District of New York, the petitioner argued he was entitled to a downward departure because he was ineligible for certain programs due to his alien status, but the district court denied his request. *United States v. Rojas*, Nos. 08 Civ. 75A, 03 Cr. 34A, 2008 WL 495502 (W.D.N.Y. 2008). In light of the legal authority in this Circuit, therefore, Petitioner's ineligibility for certain correctional programs due to his alien status, while unfortunate, is not an adequate basis for a downward departure of his sentence.

### 3. Attorney General's 1995 Memorandum Does Not Grant Downward Departure

In his 2007 Motion, Petitioner argues that the Attorney General's April 1995 Memorandum[2] (the "1995 Memorandum") grants him the right to a two-level departure in his sentence if he accepts a final deportation order. 2007 Mot., at 1-2. The Second Circuit, however, specifically rejected the argument that the 1995 Memorandum "establishes a uniform policy which must be applied to all defendants who consent to deportation." *United States v. Zapata*, 135 F.3d 844, 848 (2d Cir. 1998). In addition, at the time that the Petitioner was sentenced, the U.S. Attorney's Office had no policy of granting downward departures of any kind to defendants who agreed not to contest deportability. *See United States v. Galvez-Falconi*, 174 F.3d 255, 259 (2d Cir. 1999). Therefore, the Government would not have supported a downward departure at the time Petitioner was sentenced.

A district court does have the authority to grant a downward departure under U.S.S.G. § 5K2.0 if a defendant "presents a colorable, non-frivolous defense to deportation, such that the act of consenting to deportation carries with it unusual assistance to the administration of justice." *Id.* at 260. Here, however, Petitioner neither consented to deportation nor argued that such a concession would assist in the administration of justice. Therefore, Petitioner's argument for a downward departure in his sentence is without merit.

### III. CONCLUSION

For the foregoing reasons, Petitioner's 2005 and 2007 Motions are hereby DENIED and DISMISSED. The Clerk of the Court is instructed to close these matters and remove them from my docket.

**IT IS SO ORDERED.**

New York, New York
April ___, 2008

U.S.D.J.

---

[2] The 1995 Memorandum charged that federal prosecutors "should seek the deportation of deportable aliens defendants in whatever manner is deemed more appropriate in a particular case . . . . [P]rosecutors *may* agree to recommend a one or two-level downward departure from the applicability guideline sentencing range in return for the alien's concession of the deportability and agreement to accept a final order of deportation." Memorandum to All Federal Prosecutors from Attorney General, re Deportation of Criminal Aliens (Apr. 28, 1995), *at* http://www.usdoj.gov/ag/readingroom/deportation95.htm, at 1-2 (emphasis added).